**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George Sam MAGIN, Defendant-Appellant.**

**No. 12929.**

United States Court of Appeals Seventh Circuit.

June 10, 1960.

Rehearing Denied July 25, 1960.

Emerson Baetz, Alton, Ill., for appellant.

C. M. Raemer, U. S. Atty., East St. Louis, Ill., Robert D. McKnelly, Asst. U. S. Atty., Danville, Ill., for appellee.

Before DUFFY, KNOCH and CASTLE, Circuit Judges.

DUFFY, Circuit Judge.

Defendant was indicted and tried before a jury for alleged violation of Title 18 U.S.C. § 1621,[1] by the giving of false testimony before a grand jury. Defendant was found guilty as to Counts I and II of the indictment, and not guilty as to Count III.

Proof in this case showed that the defendant, Magin, Frank Wortman and Elmer Dowling had been interested together in certain enterprises from 1951 to 1955, inclusive. These ventures and the respective interests therein, will now be described.

In 1951, there was in operation in southern Illinois, a gambling venture known as the Cash Sales Company. Its capital investment was supplied by thirteen persons who held the participating shares. One was Frank Wortman who held a 14% interest; another was Elmer Dowling who held a 13% interest, and the defendant held a 5% interest.

In 1951, there was in operation in southern Illinois the Club Ville which was also a gambling venture. Eight persons held participating shares therein. One was Frank Wortman who held a 20% interest; another was Elmer Dowling who held a 15% interest, and the defendant who held a 5% interest.

Another gambling venture operated in southern Illinois in 1951 was known as the Empire Club. Nine persons held participating shares. Frank Wortman held a 22½% interest; Elmer Dowling, a 15% interest, and the defendant, a 5% interest.

In 1952, a gambling venture known as the 7800 Club was in operation. One of the nine holding participating shares was Frank Wortman who held a $2500 interest; another was Elmer Dowling who held a $1750 interest, and the defendant who held a $500 interest.

In 1952, 1953 and 1954, there was in operation in southern Illinois a gambling venture known as the R.R. Club. Its capital changed over the course of its operation, but at all times was credited to nine persons, among them being Frank Wortman, Elmer Dowling and the defendant.

In 1955, there was in operation in southern Illinois a gambling venture known as the Junction "T" Club. One of the eight shareholders was Frank Wortman who held a 32½% interest; another was Elmer Dowling who held a 17½% interest, and the defendant who held a 10% interest.

The defendant was subpoenaed to testify as a witness before the grand jury. He testified he had met Buster (Frank) Wortman nine years previously, and when asked if they were close friends, stated that Wortman was a friend and neighbor. Defendant was asked the following questions before the grand jury, and he answered as stated:

"Q. Are you interested in any business, corporation, partnership or association with Mr. Wortman? A. No, sir.

"Q. None? A. No, sir.

"Q. Have you ever been? A. No, sir."

Defendant then testified that he had known Mr. Dowling for three or four

1. "Whoever, having taken an oath * * that he will testify * * * truly, * * willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, * * *."

years and the following questions and answers appeared:

"Q. Have you ever had, or do you now have, any business connection either as a partner or associate in any association, partnership or corporation with Elmer Dutch Dowling? A. No, sir.

"Q. Have you ever been a partner with Dutch Dowling? A. No, sir, never.

"Q. You have told us before you had never been connected with Frank Wortman in any business association? A. That's right.

"Q. Of any kind? A. Never have."

The grand jury before which defendant appeared was investigating, among other things, the alleged attempts to evade personal income taxes and wagering taxes on the part of Frank Wortman, Elmer Dowling, defendant Magin and others, with particular reference to gambling enterprises known as Cash Sales Co., R. R. Club, 7800 Club, the Empire Club, and others.

Defendant asserts error by the trial court in denying motions for acquittal, and on this ground seeks a reversal of the judgment of conviction with remandment accompanied by an instruction to the District Court to enter a judgment of acquittal. Defendant also asserts error in a number of respects by reason of which he claims he is entitled to a new trial. Among such grounds of error are: denial of a pretrial motion for leave to subpoena the grand jurors; denial of a pretrial motion requesting an inquiry, out of hearing of the jury, as to whether certain witnesses for the government would invoke the Fifth Amendment if placed on the stand; admission of certain evidence; refusal to give certain instructions requested by defendant, and the giving of certain instructions which were objected to by the defendant; refusing an offer of proof.

Defendant argues that it is not the contradiction between oath and fact that the law denounces as perjury, but the difference between oath and belief. The Government admits that merely proving the statements were false would not be sufficient to convict for perjury because the additional element that defendant knew the statements were false is a necessary element of proof.

The trial court correctly stated the governing principle in the following instruction to the jury: "Even if you believe, ladies and gentlemen, beyond a reasonable doubt that the defendant and Frank Wortman and Elmer Dowling were partners or owned shares in the same syndicate or syndicates at the times mentioned in the evidence, and that the defendant under oath denied that this was so, this would still be insufficient in itself to warrant conviction * * *. You would further be required to find and believe beyond a reasonable doubt that at the time of his denial under oath the defendant knew and believed such fact."

The degree and character of proof required in a perjury prosecution is different than in an ordinary criminal case. It is clear that there are two essential elements of proof. First, the statements made by the defendant must be proven false. Secondly, it must be proven that the defendant did not believe these statements to be true. It is clear that the objective falsity of the statements made must be established in conformity with the "two witness rule" which is peculiar to perjury prosecutions. Briefly stated, that rule requires "direct" proof of the falsity of the statements made by the testimony of two witnesses or by the testimony of one witness plus corroborating circumstances. In effect, the rule thus prohibits conviction on the basis of the testimony of one witness. Thus the Supreme Court stated in Hammer v. United States, 271 U.S. 620, 626, 46 S.Ct. 603, 604, 70 L.Ed. 1118:

"The general rule in prosecutions for perjury is that the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused set forth in the indictment as perjury."

This statement was reaffirmed in Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495.

The defendant, in the case at bar, does not argue that this rule was not satisfied as to the first element; that is, the objective falsity of the statements made. Indeed, he concedes that the statements were, in fact, false. However, he contends that this rule is also applicable to the second element. Thus he argues that the Government must prove that he did not believe his statements to be true in conformity with the two witness rule.

There is a conflict of authority as to the applicability of the two witness rule to the second element of perjury, the belief of the defendant in the truth of his statements. We think the better rule was well stated in the case of Young v. United States, 1954, 94 U.S.App.D.C. 54, 212 F.2d 236, at pages 240, 241, certiorari denied 347 U.S. 1015, 74 S.Ct. 870, 98 L.Ed. 1137, where the Court said:

> " * * * To return a verdict of guilty on a charge of perjury a jury must, of course, be convinced, beyond a reasonable doubt, not only that the accused testified falsely but that he did not, at the time, believe his testimony to be true. The first inquiry in a determination of whether or not the evidence was sufficient for the jury to find an accused guilty of perjury relates to the application of the 'two witness rule.' This rule is misnamed. It does not require the testimony of two witnesses. Properly stated it is that 'the uncorroborated oath of one witness is not enough to establish, for purposes of conviction of perjury, the falsity of sworn testimony.' (citations omitted) * * * We think the evidence offered on the first count satisfies the rule.

> "Fulfillment of the two witness rule is necessary for conviction of perjury. It is not, however, sufficient for conviction. An additional requirement is that the jury could reasonably believe that there was no reasonable doubt as to defendant's guilt. (citations omitted.) This requirement, of course, relates to both elements of perjury: the falsity of the testimony and the lack of a belief in its truth. Generally, a belief as to the falsity of testimony may be inferred by the jury from proof of the falsity itself. * * * * "

The above language was quoted with approval by this Court in the case of United States v. Parker, 7 Cir., 1957, 244 F. 2d 943, 950.

Both sides cite American Communications Association, C. I. O. v. Douds, 1950, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925. This case requires a close analysis. It was not a criminal case, but the court was there construing the non-communist affidavit provision of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 151 et seq. The Court stated, 339 U.S. at pages 410 and 411, 70 S.Ct. at page 690.

> "Insofar as a distinction between beliefs and political affiliations is based upon absence of any 'overt act' in the former case, it is relevant, if at all, in connection with problems of proof. In proving that one swore falsely that he is not a Communist, the act of joining the Party is crucial. Proof that one lied in swearing that he does not believe in overthrow of the Government by force, on the other hand, must consist in proof of his mental state. To that extent they differ.

> "To state the difference, however, is but to recognize that while objective facts may be proved directly, the state of a man's mind must be inferred from the things he says or does. Of course we agree that the courts cannot 'ascertain the thought that has had no outward manifestation.' But courts and juries every day pass upon knowledge, belief and intent—the state of men's minds— having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be

inferred. See 2 Wigmore, Evidence (3rd ed.) §§ 244, 256 et seq. False swearing in signing the affidavit must, as in other cases where mental state is in issue, be proved by the outward manifestations of state of mind. In the absence of such manifestations, which are as much 'overt acts' as the act of joining the Communist Party, there can be no successful prosecution for false swearing."

A casual reading of this language might lead to the interpretation that "direct" evidence was an essential element of proof of the second element of perjury. However, it is clear the Court was not discussing the second element, that is, the defendant's knowledge of the falsity of the statement. The Court was referring to the first element, that is, the actual falsity of the statement. In the language quoted, the Court was directing its attention to the requirement that officers of a labor organization must file affidavits that they do not believe in the overthrow of the Government of the United States by force.' In any prosecution arising from the filing of false affidavits, the first element to be proven would be that the statements made in the affidavits were false. If such a defendant in a criminal case did not believe in the overthrow of our Government by force, the prosecution for perjury would be dismissed because the first element essential to such a prosecution would be absent.

It is quite clear that in the Douds case, the Supreme Court was not extending the two witness rule to the second element in perjury. The confusion arises from the fact that in such a case, the false statement itself is a statement of what the witness believed. In the ordinary perjury prosecution, such as the case at bar, the false statement is not a statement of belief, but rather, a false statement of some objective fact. Thus, in the case at bar, the element of belief enters into the case only in proving the second element of perjury which was that the defendant knew when he made the statement that it was not true.

Defendant cites United States v. Remington, 2 Cir., 191 F.2d 246. It is true that in this case the Court held the two witness rule applied to the second element of a perjury prosecution. However, the Court reached this result in reliance upon the Supreme Court's opinion in Douds. It construed the Douds case as extending the two witness rule to the second element of perjury prosecutions. For the reasons heretofore stated, we think such an interpretation is erroneous.

Defendant insists that in no case can there be a conviction of perjury if circumstantial evidence is necessary to establish the intent and belief of the accused at the time he testified under oath. We think, however, that strong and convincing circumstantial evidence may prove the intent to falsify just as circumstantial evidence can be used in other criminal cases to establish guilt of an accused beyond a reasonable doubt.

On the question of intent in the case at bar, the jury was entitled to consider with other evidence, defendant's income tax returns showing income from various gambling enterprises in which Wortman and Dowling had substantial interests; that such common interests extended over a period of five consecutive years; that Wortman and defendant were friends and neighbors, and had been such for some nine years. The very fact these enterprises in which defendant, Wortman and Dowling had mutual interests, were unlawful, would necessarily mean that any meetings of those interested would be in secret. It would indeed strain a juror's credulity to the breaking point to believe that one who had been associated with a relatively small group in a number of unlawful endeavors for a period of five years, did not know those associated with him.

We shall now consider some of the allegations of error which defendant asserts entitle him to a new trial.

Defendant made a pretrial motion to subpoena the twenty-three grand jurors, the United States Attorney, and the two Assistant United States Attorneys who had actively assisted the grand jury. Defendant points out that the Sixth Amendment provides that a defendant in a criminal prosecution may have compulsory process for obtaining witnesses in his favor. We do not know of any federal court decisions directly in point.

 There can be no possible error as to Maag and Morris, the two Assistant United States Attorneys. They testified at the trial and were subjected to a vigorous cross examination both as to defendant's testimony before the grand jury and the subject matter of the investigation by the grand jury. The foreman of the grand jury who administered the oath to defendant, was likewise a witness at the trial, and was also subjected to a broad cross examination.

 Defendant made no attempt in his motion to show a need for the testimony of the grand jurors. The policy of secrecy as to federal grand jury proceedings is well known. To permit the unlimited interrogation of grand jurors as to what transpired during the course of their investigation, is tantamount to permitting inspection of the grand jury minutes. It is established that the burden is on the defense to show that a particularized need exists for the minutes which outweighs the policy of secrecy. Pittsburgh Plate Glass Company v. United States, 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323. We hold there was no error in the trial court's refusal to grant the request for the subpoena of the grand jurors and the United States Attorney and his assistants.

Defendant's motion for a hearing on whether certain prospective witnesses for the Government would claim the privilege against self-incrimination, was made after the selection of the jury had been completed. Defendant had made nine previous motions at various intervals before the trial. Six hearings had been held. The hearing demanded by defendant would have delayed the trial. Furthermore the trial court gave a proper cautionary instruction.

Defendant has cited cases where judgments of conviction were reversed because of alleged error in calling witnesses who claimed the privilege against self-incrimination. But, in none of these cases had a proper cautionary instruction been given by the Court. On the other hand, in cases such as United States v. Hiss, 2 Cir., 185 F.2d 822, 831, 832, and Weinbaum v. United States, 9 Cir., 184 F.2d 330, 331, Courts of Appeals have refused to reverse on that ground. Under the circumstances of this case, we hold the refusal to order a hearing was not error.

We have considered each of the other assignments of error. We find them to be without merit.

The judgment of conviction is
Affirmed.