William J. JACKSON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16342.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 25, 1961.

Decided Nov. 2, 1961.

**196**

———◆———

Mr. George W. Shadoan, Washington, D. C. (appointed by this court) for appellant.

Mr. Judah Best, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Charles T. Duncan, Asst. U. S. Atty., were on the brief, for appellee. Messrs. Nathan J. Paulson and Daniel J. McTague, Asst. U. S. Attys., also entered appearances for appellee.

Before FAHY, BASTIAN and BURGER, Circuit Judges.

BASTIAN, Circuit Judge.

Defendant [appellant] was indicted, tried and convicted under a two-count indictment charging violation of the narcotics laws. He appeals.

The main ground urged for reversal of this case is that the trial court erred in denying defendant's request that the court inspect *in camera* the grand jury testimony of the arresting detective for possible inconsistencies.

On the day of the alleged offense, Detective David Paul, with Detective Irwin Brewer, was driving a police cruiser on Eleventh Street, N. W., in the District of Columbia. As they turned the corner of Eleventh and S Streets, Detective Paul observed the defendant and three other persons come out of the 1100 block of S Street and start to turn into the 1800 block of Eleventh Street. Having previous knowledge of defendant, and based on this knowledge, he concluded that it was very possible that the parties were in possession of heroin. He saw defendant look in his direction, then slow down and drop a package on the sidewalk. He left the cruiser, recovered the package, and thereupon placed defendant under arrest. The package was found to contain forty capsules of a white powder which, on testing, proved to be heroin.

At the end of the direct examination of Detective Paul, defendant requested, under 18 U.S.C. § 3500 and under the Jencks rule,[1] the production of any statements made by the witness. The statements, consisting of a summary report, were produced. Defendant further requested the court to inspect, *in camera,* the grand jury testimony for possible discrepancies. This motion was denied.

On cross examination, the following occurred:

"Q. Detective Paul, do you recall discussing this case with me earlier? Do you recall having a conversation with me on a number of occasions? A. I think you called me once or twice on the phone, sir."

Further, on recross examination:

"Q. And is it not a fact that during the course of that conversation you stated to me that all you saw the defendant doing was making a pitching motion; that you didn't see him with anything in his hand; that you didn't see him drop the narcotics? A. No sir; I never made that statement to you, sir."

Counsel for defendant [who is not counsel in this appeal] did not follow up any of the above testimony by introducing evidence showing that any statements were made to the effect indicated by the questions.

After the testimony of Detective Paul, a stipulation agreed to by counsel for the Government and for defendant was tendered to the court, and received in evidence, to the effect that if Detective Brewer had been present at the trial "his testimony would be cumulative with that of Detective David Paul."

---

1. *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d (1957).

We thus have, in effect, the testimony of two officers with not the slightest ground for belief that there were any inconsistencies in the testimony before the grand jury. There is nothing in the record to indicate the likelihood of discrepancies in the grand jury testimony of the witness Paul. Further, he was not asked if he had made any inconsistent statements before the grand jury. In fact, he was not even asked if he had testified before the grand jury.

█ It is to be noted that this is not a Jencks case. Whatever right there is for examination of grand jury records must be related to Fed.R.Crim.P. 6(e), 18 U.S.C.A.[2]

█ As we said in DeBinder v. United States, 110 U.S.App.D.C. 244, 292 F.2d 737, 739 (1961):

"It is beyond dispute that 'the trial judge may in the exercise of his discretion order the minutes of a grand jury witness produced for use on his cross-examination at trial.' Pittsburgh Plate Glass Co. v. United States, 1959, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323. Such disclosure is not a matter of right; rather '[t]he burden * * is on the defense to show that "a particularized need" exists for the minutes which outweighs the policy of secrecy.' Ibid. Where the defense is unable to show 'any need whatever for the testimony' and disclosure is demanded solely as a matter of right, the Supreme Court has held that grand jury minutes need not be produced. Ibid."

It is true that in DeBinder a majority of the division of the court hearing the case felt that it should be remanded to the District Court with instructions to permit defense counsel to examine the grand jury testimony. In that case, the defendant's need for the minutes was held to be apparent and the burden of showing a "particularized need" was held to have been met. The majority thought that the evidence suggested the possibility of inconsistencies, and held that the record disclosed ample ground for such suspicion. DeBinder had been convicted of housebreaking and larceny, and the case for the prosecution rested principally upon the testimony of the complaining witness, who was the only eyewitness. On the morning after the crime she had been confronted with the defendant's twin brother. She definitely identified DeBinder at the time of trial, and testified that, at the time of confrontation with his twin brother, she had stated that the twin was not the intruder. However, a defense witness testified that the complaining witness had made positive identification of the twin, at the time of confrontation, as the intruder. This the majority felt justified the action taken by this court.

██ In the present case, there is not the slightest evidence of inconsistency except the question above quoted, which could be considered of doubtful propriety when not followed up. If defendant's position is correct, Rule 6(e) might well be eliminated and defense counsel in every case be allowed to go

2. Rule 6(e). *Secrecy of Proceedings and Disclosure.* Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance and execution of a warrant or summons."

upon a fishing expedition in the hope of developing something favorable to the defense. It is within the sound discretion of the trial judge to decide when grand jury testimony is to be revealed to the defense, after a proper foundation is laid. Here, however, no foundation whatever was laid and the trial court was clearly correct in ruling as he did.

An interesting case having to do with the traditional reluctance of the court to disturb the secrecy of grand jury proceedings is that of United States v. Geller, 154 F.Supp. 727 (S.D.N.Y.1957). See also United States v. Magin, 280 F. 2d 74 (7th Cir. 1960), cert. denied 364 U.S. 914, 81 S.Ct. 271, 5 L.Ed.2d 228, rehearing denied 364 U.S. 944, 81 S.Ct. 458, 5 L.Ed.2d 375 (1961), where the District Court, citing Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323, said:

> "It is established that the burden is on the defense to show that a particularized need exists for the minutes which outweighs the policy of secrecy." 280 F.2d at page 79.

And see Herman Schwabe, Inc. v. United Shoe Machinery Corp., D.C., 21 F.R.D. 233.

In the case before us, there was no compelling necessity [3] for the production of the grand jury proceedings nor any showing that the application of the rule of secrecy would defeat the ends of justice.[4]

We have examined the other contention raised by defendant and find it without merit.

Affirmed.

BURGER, Circuit Judge (concurring).

I concur fully with Judge Bastian's opinion but I think a word of admonition may well be in order at this point, since this case is in many respects typical of many of our criminal appeals which are taken at public expense with counsel appointed by the court. In the trial of this case trial counsel asked the detective if he recalled a telephone conversation in which the officer told defense counsel that he did not see the defendant with anything in his hand; that he hadn't seen him drop anything; and that what he said he saw was the defendant making some sort of motion which he interpreted to be a pitching motion, and that he didn't see him drop anything. The officer categorically denied such a conversation.

No effort was then made by defense counsel to follow this line of questioning with proof of the alleged "facts" or of the assumptions implicit in the questions. To be sure, it might have been awkward for the lawyer to take the stand and testify, but if he was not prepared to do this, even if it meant withdrawing from the case he should not have asked the questions. Counsel asking such questions with no intention of following them up if the answers were negative, would be subject to severe censure. We assume in this case that it was a thoughtless "shot in the dark" attributable perhaps to lack of experience in the highly practical and difficult art of trial advocacy. Utterances similar to this when made by a prosecutor have led us to reverse criminal convictions. Cf. Stewart v. United States, 101 U.S.App.D.C. 51, 247 F.2d 42 (1957).

It must be remembered that there is not a dual standard of conduct, one for the prosecutor and one for the defense counsel. Nor is there a different standard of professional duty as between paid and unpaid counsel. The fact that improper conduct of a prosecutor is more readily dealt with by reversal of convictions should not lead defense counsel to believe that such conduct goes unnoticed by this court.

---

3. United States v. Proctor & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

4. United States v. Rose, 215 F.2d 617 (3d Cir.1954).