Charles P. LA PLACA, Defendant, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 6567.

United States Court of Appeals
First Circuit.

Heard Nov. 3, 1965.

Decided Dec. 15, 1965.

Certiorari Denied Feb. 28, 1966.

See 86 S.Ct. 932.

Francis J. DiMento, Boston, Mass., with whom James J. Sullivan, Jr., and DiMento & Sullivan, Boston, Mass., on brief, for appellant.

John Paul Sullivan, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U. S. Atty., on brief, for appellee.

Before ALDRICH, Chief Judge, and HASTIE * and McENTEE, Circuit Judges.

McENTEE, Circuit Judge.

Defendant was convicted of giving perjured testimony in violation of 18 U.S.C. § 1621.[1] The alleged perjury occurred on December 12, 1963 in the United States District Court in Boston at the trial of one Alfred Fagundes who was charged with armed robbery of the Brookline Trust Company in Brookline, Massachusetts. It was established at the trial that the robbery took place between one o'clock and 1:20 in the afternoon of September 5, 1963. Fagundes claimed that about that time he was in Middlesex Superior Court in Cambridge; that he arrived there "about 1:50" on that afternoon and appeared before the court at 2 p. m. to have a default removed in connection with some charges then pending against him.

The testimony of the appellant, La Placa, at the Fagundes trial substantiated this alibi and it is this testimony that is the basis of the perjury indictment against him. La Placa testified he was a bondsman by occupation and had provided bail for Fagundes in the cases pending against him in Middlesex Superior Court; that he remembered the events of September 5, 1963 [the day of the robbery] "very well;" that having heard Fagundes had been defaulted in Middlesex Superior Court that morning, he went looking for him, and failing to locate him arrived at Middlesex Superior Court in Cambridge shortly before one o'clock; that he was afraid the bond would be defaulted; that when court adjourned at one o'clock he had a brief conversation at the court house with a Lieutenant Collins of the Somerville police in which he mentioned the Fagundes default; that "sometime around 1:30 p. m." Fagundes came into the court house with his lawyer and the three of them went upstairs to the court room; and after a brief wait, Fagundes and his attorney went into the court room and the default was removed. La Placa carefully explained that he fixed the time of Fagundes' arrival at Middlesex Superior Court at 1:30 to 1:40 p. m. because he thought it was during the noon recess, that he assumed court would start again at 2 p. m. and that Fagundes came in about a half hour before court resumed that afternoon.

---

* Sitting by designation.

1. "Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both."

To show the falsity of this testimony the government produced three witnesses. The testimony of the official court stenographer who was on duty in Middlesex Superior Court on September 5, 1963, showed that when the case of Commonwealth v. Fagundes was called at the afternoon session shortly after 2 p. m., no one appeared.

The Assistant District Attorney of Middlesex County who was also on duty during the afternoon session of that day, which he said commenced at 2 p. m., testied that when the Fagundes case was first called Fagundes was not in court; that at 2:20 p. m. he was not in court; that at 2:30 p. m. Fagundes' attorney addressed the court and a recess was called; that upon returning to the court room about 2:50 he saw Fagundes in court for the first time that day.

The government also produced Lieutenant Collins, with whom La Placa had testified he had a conversation at about one o'clock that day. Collins testified that this conversation took place at 2:30 p. m. and not 1 p. m. He also testified that he saw Fagundes hurriedly come into the court room at 2:45 p. m.

La Placa took the stand in his own defense and readily admitted that the testimony quoted in the indictment against him that Fagundes came into Middlesex Superior Court "sometime around 1:30 p. m." on the day of the robbery was the testimony he gave at the Fagundes trial. He again explained that he judged the time to be sometime around 1:30 because he knew it was after a recess and thought it was the noon recess. He now contends that if in fact this was not the time Fagundes arrived at Middlesex Superior Court he had merely made an innocent mistake as to time.

■ The principal question raised on appeal is—what degree of proof is necessary to uphold a perjury conviction. The degree and character of the proof required in a perjury prosecution are different than in an ordinary criminal case.

United States v. Magin, 280 F.2d 74 (7th Cir. 1960). There are two essential elements of proof in perjury cases.[2] First, the statements made by the defendant must be proven to be in fact false. Secondly, it must be proven that the defendant did not believe the statements when made to be true. Young v. United States, 94 U.S.App.D.C. 54, 212 F.2d 236 (1954), cert. denied, 347 U.S. 1015, 74 S.Ct. 870, 98 L.Ed. 1137.

■ It is well settled that the objective falsity of the statements made must be established in conformity with "the two witness rule" which is peculiar to perjury prosecutions. Properly stated, this rule requires direct proof of the falsity of the statements made by the testimony of two witnesses or by the testimony of one witness plus corroborating circumstances. Weiler v. United States, 323 U.S. 606, 610, 65 S.Ct. 548, 89 L.Ed. 495 (1945). In effect, then, the rule prohibits conviction based on the testimony of only one witness. Hammer v. United States, 271 U.S. 620, 626, 46 S.Ct. 603, 70 L.Ed. 1118 (1926). The testimony of Assistant District Attorney Irwin and Lieutenant Collins satisfies this rule.

■ It is the appellant's contention that "the two witness rule" should be invoked not only to prove the objective falsity of the statements, but also to prove the second element of the crime, namely, that the defendant knew his testimony was false. While objective facts may be proved directly, the state of a man's mind must be inferred from the things he says or does. American Communications Ass'n v. Douds, 339 U.S. 382, 411, 70 S.Ct. 674, 94 L.Ed. 925 (1950); United States v. Remington, 191 F.2d 246, 249 (2d Cir. 1951). As a practical matter it would be almost impossible for the prosecution to prove, except through circumstantial evidence, that La Placa actually remembered the facts to which he testified and that he knowingly made false statements. See Behrle v.

2. Under the statute (see footnote 1), the false testimony also must be given under oath and must be material. It is not disputed in this case that the appellant's testimony was given under oath and that it was material.

United States, 69 App.D.C. 304, 100 F.2d 714, 716 (1938). As the court said in United States v. Magin, supra:

"We think, however, that strong and convincing circumstantial evidence may prove the intent to falsify just as circumstantial evidence can be used in other criminal cases to establish guilt of an accused beyond a reasonable doubt."

██ Thus, we hold that the appellant's belief that the statements he made were false need not be proved by the "two witness rule;" and that in appropriate circumstances belief of falsity may be inferred by proof of the falsity itself. United States v. Magin, supra. See United States v. Nicoletti, 310 F.2d 359, 363 (7th Cir. 1962), Young v. United States, supra. Consequently, the trial court properly refused defendant's requested instruction to the jury on this point.[3]

█ The defendant also argues that there was insufficient evidence of the falsity of his testimony from which a jury could reasonably infer that he made the statements with intent to falsify. But in reviewing the evidence in this case, particularly the testimony of Lieutenant Collins and Assistant District Attorney Irwin, we feel that the jury's inferences were warranted by the evidence. This is especially so in light of the statement made by La Placa himself at the Fagundes trial that he remembered "very well" the events of September 5, 1963. That date was only some two months past, and appellant was no mere bystander. Since he stood to lose $25,000 if Fagundes was not found in time to persuade the

court to remove the default, it is reasonable to assume that the events of the day had made a very considerable impression.

██ Finally, appellant contends that the testimony of the official court stenographer of Middlesex Superior Court was admitted into evidence in violation of the hearsay rule. It is basic that hearsay is an extra-judicial statement offered for the purpose of proving the truth of the matter contained therein. This evidence was not introduced for that purpose.[4] Statements serving to mark a time or place are admissible so far as they have a real service for that purpose and are not used merely as a pretext for introducing a hearsay assertion. See 6 Wigmore, Evidence § 1791 (3d ed. 1940).

Affirmed.

---

3. The defendant duly filed a request for instruction as follows:

"20. In a case such as this, the Government is required to prove beyond reasonable doubt that the defendant knew his testimony was untrue when given and such knowledge must be proven by the sworn testimony of two witnesses or of one witness whose testimony is corroborated or supported by other evidence in the case."

4. The trial court carefully instructed the jury that this evidence was admitted for the limited purpose of allowing the jury to consider, to the extent that the "notes indicate that at sometime, the exact duration of which is for you [the jury] to decide, after the afternoon session began in the Middlesex Superior Court on September 5, 1963, they called the Fagundes case over there and nobody appeared, purporting to be Mr. Fagundes, the first time the case was called on the afternoon of September 5."