Louis Edward BAKER, Petitioner-
Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 16130.

United States Court of Appeals
Seventh Circuit.

Feb. 12, 1968.

Patrick J. Hughes, Jr., Chicago, Ill.,
for appellant.

K. Edwin Applegate, U. S. Atty.,
James Manahan, Sidney Milun, Asst. U.
S. Attys., Indianapolis, Ind., for appellee.

Before KNOCH, Senior Circuit
Judge, and KILEY and FAIRCHILD,
Circuit Judges.

KNOCH, Senior Circuit Judge.

This appeal has been taken from denial
of a petition filed by Louis Edward
Baker, pursuant to Title 28, U.S.C. §
2255, to set aside a previous conviction
in the case of United States v. Louis
Edward Baker, in the United States Dis-
trict Court for the Southern District of
Indiana, Indianapolis Division.

Petitioner cites the following as re-
versible errors:

(a) The prosecution called as a wit-
ness the petitioner's co-defendant, who
invoked his privilege against self-incrim-
ination in the presence of the jury.

(b) The prosecution failed to provide
the petitioner during his trial with tran-
scripts of the prior testimony of witness-
es at his trial who had also testified at
the earlier trial of his co-defendant.

A one-count indictment charged peti-
tioner and his co-defendant, James Stan-
ley Pipes with bank robbery under Title
18, U.S.C. § 2113(a), the taking of about

$20,900 by force, violence and intimidation from employees of the Brightwood office of the Merchants National Bank and Trust Company, Indianapolis, Indiana, on or about July 7, 1964.

■ Petitioner's motion for a separate trial was allowed. His co-defendant Pipes who waived trial by jury was tried first. He was found guilty. Some of the witnesses who testified for the government in the trial of Pipes also testified for the government in the later trial of petitioner. After each of these witnesses testified, petitioner demanded a copy of the testimony at the prior trial for the purpose of cross-examining that witness. In each case such transcript was not forthcoming because the stenographic notes of the prior trial had not been transcribed. In his direct appeal, United States v. Baker, 7 Cir., 1966, 358 F.2d 18, cert. den. 385 U.S. 869, 87 S.Ct. 135, 17 L.Ed.2d 96, petitioner contended he was entitled to these transcripts under the Jencks Act, Title 18, U.S.C. § 3500. The Court held that such transcripts did not come within the language of the Jencks Act. The Court also held (at page 20) that even assuming that a court reporter in a separate trial came within the wording of the Act, in the instant case there was no request for the transcript prior to the trial and the government had no obligation to transcribe testimony in a criminal trial in anticipation that some of the witnesses might be called to testify in a related trial.

Petitioner argues that despite disposition of the transcript question on his direct appeal, this Court must now consider that question anew because it is raised on grounds different from those on which it was previously adjudicated. Petitioner now asserts that denial of the transcript to him, an indigent, rendered his trial unfair by Constitutional standards. He states that had he been possessed of the funds to purchase the transcript, he could have obtained it. The Trial Judge when ruling on this question in the first instance stressed the want of request in advance of trial. He refused to recess the trial to have the court reporter make

up a transcript of the witness's prior testimony. The indigence of the petitioner was not a factor. We cannot agree with petitioner that his indigent status gave him an additional privilege unavailable to a non-indigent defendant of demanding the transcript in the course of trial without adequate advance notice.

■ Although no objection was made at the trial, and the issue was not raised on the direct appeal, petitioner contends plain error was committed when the government called co-defendant Pipes who invoked the Fifth Amendment as a witness. Petitioner also feels that further hearing is in order to determine whether the prosecutor knew in advance that the witness would invoke the privilege against self-incrimination. As the government notes, the record shows that Pipes announced in advance in open court before taking the stand that he would not testify. Both government and defense counsel were present. There is no necessity for further hearing to determine the prosecutor's knowledge that Pipes would refuse to answer questions.

■ Petitioner's theory is that the jury had heard the indictment and knew that Pipes was indicted for the same offense as petitioner; they knew he had been tried separately; they saw him obviously in custody and must have reasoned that he was already convicted. As he was then beyond the danger of incriminating himself, when he invoked the privilege against self-incrimination, petitioner argues that the jury could infer, in the absence of instruction to the contrary, that Pipes was refusing to testify in an effort to protect not himself but the petitioner, with resultant prejudicial effect on the jury's thinking. In the circumstances of this case, we find the theory untenable. Pipes was asked only five questions. He answered the first two: as to his name and age. He refused to state, on the grounds that he might incriminate himself, whether he had resided in Louisville, Kentucky; whether he had owned a 1954 automobile; and whether he was the same James Stanley Pipes indicted with peti-

tioner for robbery of the Brightwood branch of the Merchants National Bank. He was asked no questions about the petitioner or his relationship with him. A major danger in refusing to answer questions is the risk that the jury will draw an affirmative inference from silence. Thus, at worst, the jury here might have inferred that Pipes had resided in Louisville, Kentucky; that he had owned a 1954 automobile, which had been used in a crime; and that he was the same Pipes named in the indictment. However, the government presented undisputed evidence from other witnesses to prove these very points.

The government explains that it was anxious to have the identified physical exhibit of Pipes' own person in court as a connecting link in the government's evidence. Eye witness identification of Pipes, who was bareheaded at the time, was much stronger than that of the petitioner who had worn both cap and glasses at the time of the robbery. Much of the evidence placed the two defendants together for a substantial time before and after the robbery. In final argument to the jury, government counsel commented on the close linkage between the petitioner and Pipes.

Petitioner suggests that there were other methods available for identifying Pipes, such as exhibit of photographs, or having a witness point him out as present in the courtroom, without actually putting him on the witness stand. In the circumstances of this case, we do not believe that it was incumbent on the government to choose the less effective of several possible methods of identifying this man in order to show the linking up of its chain of proof.

The primary evil sought to be averted in calling a witness who will assert a privilege against self-incrimination arises from an interrogation which has no apparent purpose but to invite invocation of the privilege. That was the situation in United States v. Tucker, 3 Cir., 1959, 267 F.2d 212, which involved a twice tried case. One witness invoked his privilege at the first trial when asked a particular question. He was asked the same question at the second trial although there was no reason to believe that he would answer it then, having previously refused. The case was reversed on other grounds, but as it would have to be tried a third time, the Court invited attention to this impropriety to avoid its repetition. The Court cited United States v. Amadio, 7 Cir., 1954, 215 F.2d 605, also cited by petitioner here, where defendant was charged with inducing one female to travel in interstate commerce and transporting another in interstate commerce for immoral purposes. His conviction was affirmed. A great deal of evidence had been adduced to show the surrounding conditions of the places of habitation and employment of the two women involved. Two witnesses were asked questions concerning their participation in immoral conduct. Both invoked the privilege. The Court thought it clear that the government knew in advance that these two witnesses intended to refuse to answer questions deemed by the government to be pertinent to the case on trial on the ground of their privilege against self-incrimination, and stated that it was improper for the government to attempt to force them to testify. The petitioner contends that in this and similar cases, e. g., United States v. Magin, 7 Cir., 1960, 280 F.2d 74, 79; United States v. Shaffer, 7 Cir., 1961, 291 F.2d 689, 694, the error was cured by instructions. These cases are easily distinguished.

The government here was not attempting to build its case on inferences from use of the privilege. No attempt was made to make use of such adverse inferences in closing argument, as in United States v. Maloney, 2 Cir., 1959, 262 F.2d 535, where these challenged inferences were the sole corroboration for testimony by the government's chief witness who was not a disinterested witness but an accomplice who had a long criminal record and who hoped to gain leniency by inculpating his associates. The indictment included a charge of conspiracy to pretend that one defendant

was an agent of the Federal Bureau of Investigation. His false credentials had allegedly been placed for safekeeping in the safe deposit box of his mistress, who when called as a witness refused to answer whether she had ever put anything into her deposit box at that defendant's request. Another witness whose alleged illegal operation was a part of the charged conspiracy refused to answer whether she had made arrangements for such an operation. A third witness refused to answer whether he had procured the false credentials. The Court held that the answers sought would have supported the testimony of the chief witness. The prosecution in summation had conceded knowing that two at least of the three would refuse to answer. The Court states that government counsel's comment was in such context that it could have been understood only as arguing that if the witness had not refused to answer, the answer would have been in the affirmative. The Court found it impossible to lay down any general rule to cover all instances, but summarized past cases in which the problem had arisen, noting in passing the case of United States v. Gernie, 2 Cir., 1958, 252 F.2d 664, 669–670, where the witness had lost any privilege he might have had because he had been convicted of the offense as to which he was being questioned, and the jury had been cautioned not to use the refusal as evidence of what the answer would have been. The Court in that case had held (p. 670) that it was error to sustain the claim of privilege.

No admonition to the jury had been requested in *Maloney,* as none apparently was in the case before us. The Second Circuit characterized failure to give such an admonition in *Maloney* as error, where two of the refusals touched on corroboration of the only source of jurisdiction: the use of the FBI credentials.*

In Namet v. United States, 1963, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278, which both parties appear to view as decisive, the petitioner had been convicted of violating the federal wagering tax law. During the trial the prosecutor asked two witnesses, a husband and wife, incriminating questions about their relationship with the petitioner, knowing they would invoke their privilege against self-incrimination. Both had originally pleaded not guilty to similar charges but on the day of petitioner's trial had changed their pleas to guilty. The Trial Judge concluded that the plea of guilty to engaging in the business of accepting wagers deprived the witnesses of their right not to testify about their own gambling activity, but he sustained refusals to answer certain questions about other activities. One of the key issues was whether the places regularly visited by petitioner were known gambling establishments. No instruction was requested regarding inferences the jury might draw from refusals to testify. In closing argument, the government made no reference to any such refusals to testify. The jury was not told that the petitioner and the two witnesses had been arrested or charged together.

The Trial Court instructed the jury, without request or objection of defendant:

> "nor should any inference be drawn against him because the [two witnesses] refused to testify, unless it would be a logical inference that would appeal to you as having a direct bearing upon the defendant's guilt."

In affirming the conviction, the Supreme Court did not decide whether that instruction was right or wrong, but held that, assuming it was wrong, it was not plain error or a defect affecting substantial rights.

In discussing the factors which suggests error, the Supreme Court refers to

---

* We view with some sympathy a well reasoned dissent which points out that an unrequested instruction, which draws the jury's attention to possible inferences the jury might otherwise have ignored, might also be characterized as error and suggests that defendants be permitted to request or dispense with the admonition as best seems fit for their defense.

conscious and flagrant attempts to build a case out of inferences arising from use of the testimonial privilege, and to inferences from a witness's refusal to answer which add critical weight to the prosecution's case in a form not subject to cross-examination and thus unfairly prejudice the defendant.

In *Namet,* the Supreme Court found no prosecutorial misconduct, asserting that a prosecutor need not accept at face value every asserted claim of privilege, noting that in *Namet,* the witnesses did possess non-privileged information which could be used to corroborate the government's case. The Supreme Court also stressed the fact that, unlike *Maloney* (and like the case before us) the refusal to answer was not the only or chief source of the inference that the witness engaged in criminal activity with the defendant.

None of the grounds for reversal suggested by the Supreme Court's opinion exist here.

This Court is grateful for the conscientious and skilled efforts of Mr. Patrick J. Hughes, Jr., of the Illinois bar, who represented petitioner in this appeal as Court-appointed counsel.

The judgment of the District Court is affirmed.

Affirmed.