UNITED STATES of America,
Plaintiff-Appellee,

v.

Jose PEREZ and Vivian Perez,
Defendants-Appellants.

Nos. 73–1436 and 73–1437.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 14, 1973.

Decided March 18, 1974.

Charles O. Thomas, Kansas City, Kan., for defendants-appellants.

Monti L. Belot, III, Asst. U. S. Atty., Topeka, Kan. (Robert J. Roth, U. S. Atty., Richard L. Meyer and Thomas A. Hamill, Asst. U. S. Attys., Topeka, Kan., on the brief), for plaintiff-appellee.

Before LEWIS, Chief Judge, and HOLLOWAY and McWILLIAMS, Circuit Judges.

HOLLOWAY, Circuit Judge.

Jose and Vivian Perez appeal their convictions for distributing or dispensing heroin and for possession of heroin, a controlled Schedule I substance. 21 U.S.C.A. §§ 841(a)(1) and 844. Vivian was convicted on count 1 for distributing or dispensing a quantity of heroin; Jose was convicted on count 2 for distributing or dispensing a separate quantity of heroin; and they were jointly convicted of possession of other heroin on count 3.[1] While we agree with two claims of error asserted by the defendants, on this record we believe those errors were harmless and affirm.

These cases developed from a lead to Jose and Vivian Perez by an unnamed informant. The government claimed the privilege of protecting the identity of the informer and he did not testify at the trial. His name and whereabouts were the subject of cross-examination, but the trial court sustained objections based on the claim of privilege. No issue is directly raised on appeal based on the failure to have the informer present at the trial. There are serious arguments made, however, that the right of confrontation and the hearsay rule were violated by the admission of testimony of government witnesses as to statements the informer made to them. These contentions are discussed later.

The government proof tended to establish these facts. On October 2, 1972, Scott, an undercover agent of the Bureau of Narcotics and Dangerous Drugs, made contact through the informant with Jose and Vivian. During conversation with Scott, Vivian explained that they would provide Scott with drugs and he then would repay them as he obtained money for selling the drugs. Vivian said that if he was honest with them he could make a lot of money for himself.

---

1. Count 3 of the indictment charged that Jose and Vivian knowingly and intentionally possessed with intent to distribute three grams of heroin in violation of 21 U.S.C.A. § 841(a)(1). However the court also instructed on the lesser included offense of simple possession as a violation § 844 and the jury found the defendants guilty of the lesser included offense. As to this conviction on count 3, defendants' brief makes no request for reversal for retrial.

Arrangements were made for purchase of some heroin and later that day Vivian delivered a tinfoil packet of heroin to Agent Scott at a Safeway parking lot in Kansas City, Kansas. Vivian was not paid at that time but told Scott that the price for the heroin was $450.

The next day Scott made further contact with Jose. Arrangements were later made for a meeting with Jose at the Kansas University Medical Center. This contact occurred on October 4 and Jose there delivered another package of heroin to Scott. This transaction involved approximately 22 grams of heroin which was of a much purer nature than that normally found on "the street." Scott testified that this material would probably make 800 dosage units at the street level, worth about $8,000 currently in Kansas City.

On October 7 a search pursuant to a warrant was carried out at the residence where Jose and Vivian were living. The search uncovered approximately 3 grams of heroin. On the back porch adjoining the house approximately 13.6 grams of lactose were found, a cutting substance used with heroin. A set of scales was seized and a quantity of money was found in a lady's coat, including $380 of the $450 in bills paid to Jose on October 4.

The principal defense was entrapment. Jose testified he came to Kansas City with his wife to try to break the heroin habit and find a job. In Ft. Worth, he could not break the habit because when he would come out the door of the clinic, there would be pushers waiting to sell heroin. When he came to Kansas City he joined the methadone center at Kansas University Medical Center and got a maintenance job at the Kansas University.

While Jose and Vivian were attending this clinic Jose was given heroin by Mike James. Jose said he had come on James in a restroom where he was preparing to inject himself with heroin. James offered him heroin, which he accepted. Both Jose and Vivian became readdicted.

Dr. McKneely of the Kansas University Medical Center staff verified that Jose and Vivian had been patients at the clinic. He said his records showed Jose had begun attending the clinic in February, 1972, and had attended at various times into the summer. He also said they both returned to the clinic in October.

Jose testified that he did not pay James for the first heroin he received at the clinic. He said he subsequently made some purchases of it from James for about a month until the addiction was pretty well advanced. When Jose went to James' home on one occasion, James said his supply had run out and asked if Jose knew where to buy heroin, perhaps in Texas. James said that since his supply "had been busted, did I want to go and buy some and then I could get what I needed." Jose accepted this suggestion and brought some heroin for James, who gave Jose a part of it for his personal use. The money for the heroin from Texas was supplied by James, who had been "pushing before." Jose said he made several other trips for James to Texas and that on each occasion James gave him the money.

Jose testified that finally they had no money and that he and James were both ill and desperate. James asked if Jose could get heroin in Texas on credit which Jose did. He said he brought it to Kansas and gave it to James. James then called Jose and said he had the money to pay for the heroin purchased on credit, and that was the day "he introduced me to Agent Scott." Jose said James persuaded him to take the heroin to Agent Scott and that was why he took the heroin to him, "so that we could then pay for the credit owed in Texas."

Agent Sawyer of the Bureau testified that the informer had been arrested on September 28, 1972, and immediately was employed as a government informer. The informer was a drug user and a pusher. He entered a plea to the charge against him and received probation. As noted, the first contact arranged by the informer for Scott to see Vivian and

Jose was on October 2, 1972. Jose said this occurred at James' home and that Scott, Mike James, James' wife and Vivian were there also.

. Jose said that he brought the heroin from Texas because his habit was "pretty heavy" and his wife was also addicted against. He testified that the 3 grams of heroin found in their home were for his personal use. (As stated the jury found the defendants guilty of simple possession of the 3 grams of heroin and did not find them guilty of possession with intent to distribute it). They were using 4 or 5 grams of heroin daily. Jose also denied that he had ever gotten heroin for any one except James and Scott in his life. And he testified he was not selling heroin to obtain the money to buy heroin with, and was working sometimes during this period.

Vivian did not testify. Jose and McKneely were the only defense witnesses. Except as the testimony of Jose conflicted with it, the government proof was generally undenied.

 First, defendants argue that the trial court erred by admitting hearsay testimony through Agent Scott. On redirect Scott was asked to describe the relationship between the defendants and the informant. The trial court overruled a hearsay objection to Scott's testimony repeating statements by the informer. The court stated that a lot of other evidence about the informant had been admitted and that he thought that Vivian's counsel had opened up the subject.

Agent Scott was then permitted to testify that the informant stated to him that he had occupied a position very similar to that which Scott later occupied; that ". . . . the defendants had been giving drugs to the informant to sell for them just in the same manner in which I began to take drugs for them, to sell for them." Complaint is also made that other similar hearsay was erroneously admitted as to statements by the informant describing actions by the defendants.

We must agree that the admission of such testimony was error. It is true that defense counsel cross-examined in some particulars about the informer and his relationship with Agent Scott. However, we cannot agree that the defendants had opened up the subject of proof by whatever means, and that they had waived all objections based on their right to confrontation and the hearsay rule.[2]

The testimony went to the jury on the question of guilt and involved extra-judicial statements by the informer who did not confront the defendants in court, and was not subject to cross-examination or under oath. It was inadmissible. Dennis v. United States, 302 F.2d 5, 10 (10th Cir.); La Placa v. United States, 354 F.2d 56, 59 (1st Cir.), cert. denied, 383 U.S. 927, 86 S.Ct. 932, 15 L.Ed.2d 846; see United States v. Brown, 411 F.2d 1134, 1138 (10th Cir.). And since these basic rights were infringed, the Sixth Amendment guaranty of confrontation was denied. Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297; Bruton v. United States, 391 U.S. 123, 126, 88 S.Ct. 1620, 20 L.Ed. 2d 476; Favre v. Henderson, 464 F.2d 359 (5th Cir.), cert. denied, 409 U.S. 942, 93 S.Ct. 235, 34 L.Ed.2d 193.[3]

---

2. At one point the government brief states that the testimony of the Agent was hearsay insofar as he recited the relationship between the informer and defendants. (Appellee's Brief, p. 4) It argues that there was no prejudicial error.

This followed a government contention also made that by raising the defense of entrapment in cross-examination of Agent Scott about the informant, the defense counsel had opened the door to redirect inquiry by the prosecution to refute such inference. Thus the argument is that the testimony of Agent Scott as to the informant—defendants relationship was properly admitted. The proof was not, however, so limited by instructions in the way it went to the jury and we must consider its effect as bearing on guilt.

3. We realize, of course, that the view has been expressed that the confrontation clause does not embrace all of the limitations of the federal hearsay evidentiary rule. See e. g., Dutton v. Evans, 400 U.S. 74, 81, 91 S. Ct. 210, 27 L.Ed.2d 213 (Opinion of Mr.

For these reasons we must agree that admission of the informer's statements was error in these circumstances. However, for reasons detailed later, we are satisfied that on this record the constitutional error was harmless.

Secondly appellants argue that prejudicial and improper closing argument was made by government counsel and that the trial court erred in not granting their motions for a mistrial.

In closing government counsel argued that this was one of the most flagrant violations of federal law in drug trafficking that he had seen in the city in recent years. He further asserted that the heroin sold to the agent was the highest quality of heroin seen on the streets of Kansas City. The comments are set out in the margin.[4] At the conclusion of the government argument and shortly after making of the last comment in question, both defense counsel moved for a mistrial. The trial court denied the motions, and no admonition was given to the jury.[5]

■■■ It is clearly improper for counsel to make such a statement of his personal belief concerning the issues for trial. See United States v. Fancutt, 491 F.2d 312 (10th Cir., Feb. 5, 1974); United States v. Martinez, 487 F.2d 973, 977 (10th Cir.). Convictions have been reversed for similar improper statements by the prosecutor. See United States v. Grunberger, 431 F.2d 1062 (2d Cir.).[6] It is true that it is also improper to make argument concerning the facts not warranted by the record. See Marks v. United States, 260 F.2d 377, 383 (10th Cir.), cert. denied, 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302. However we are not persuaded that the comments here were out of line with the testimony admitted as to the quality of the heroin.

■■ There was some support for the comment on the quality of the heroin.[7] We are, therefore, not persuaded that the argument was improper or prejudicial on this score. The statement of personal belief on the seriousness of the law violations was, however, clearly improper. We have repeatedly warned that such conduct may bring reversal. Nevertheless we must consider the case as it was submitted to this jury since errors

---

Justice Stewart); United States v. Cerone, 452 F.2d 274, 283 (7th Cir.), cert. denied, 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240. Here, however, we are convinced that the error was one of constitutional magnitude in any event. See Favre v. Henderson, supra.

4. With respect to his personal views of the case the government attorney said:
 ". . . . Ladies and gentlemen of the Jury, we don't need the informant to make this case. This is one of the most flagrant violations of federal law in drug trafficking that I have seen in this city in recent years."
And in regard to the quality of the heroin he said:
 ". . . . It was this informant that tricked these poor innocent kids into this and as a result of this tricking they were able to obtain the highest quality of heroin that has been seen on the streets in Kansas City in a quantity of approximately eighty-five grams, which is worth $25,000.00."
 * * * * *
 "Ladies and gentlemen, these two defendants have brought some of the highest quality heroin into this city that has been seen in recent times and they have dealt in large quantities."

5. There were no motions to strike the remarks or to admonish the jury to disregard them. The motions were only for a mistrial, made and denied out of the hearing of the jury.

6. As the government argues it is incumbent on the defendant promptly to object to such argument. See United States v. Ward, 481 F.2d 185 (5th Cir.); United States v. Elmore, 423 F.2d 775, 780 (4th Cir.), cert. denied, 400 U.S. 825, 91 S.Ct. 49, 27 L.Ed.2d 54. However where there may be unfair prejudice, the failure to object may not constitute waiver. See United States v. Grunberger, supra, 431 F.2d at 1068–1069. We, therefore, have examined the improper statement here to determine the possibility of prejudicial effect, although the objection and motions for a mistrial were not made until the close of the government's argument.

7. In connection with the heroin sold by Jose to Agent Scott, the Agent testified that the substance was of a much purer nature than that normally found on the street. As to the heroin sold by both Vivian and Jose, he testified that the substance " . . . was relative high quality, particularly for this area."

not affecting the substantial rights of the parties are disregarded. 28 U.S.C.A. § 2111.

■■ The most serious question before us is whether the errors were harmless. As stated, we are persuaded that admission of the informer's statement was in violation of the right of confrontation as well as the hearsay rule. Thus the Sixth Amendment is involved and " . . . . before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. Thus we turn back to the informer's statements repeated by the agent.

The informer's statements repeated by Agent Scott in substance were that the defendants had been giving drugs to the informant to sell for them in the same manner, just as they later did to the agent. Such proof was undoubtedly beneficial to the government case. It covered both defendants and was in different and stronger terms than the admissions made by Jose about his activities. However, during Jose's testimony he admitted that he had a relationship of a similar nature with James, the admissions however *not* including Vivian. He admitted that he made several trips to Texas to get heroin for James. Also Vivian's and Jose's sales as proven stand out and began shortly after meeting Agent Scott. And the testimony by Jose that James "persuaded" him to take heroin to Scott, like the entrapment defense overall, was weak.

We are admonished against giving too much emphasis to "overwhelming evidence" of guilt in evaluating the effect of constitutional errors. Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284. Nevertheless, we believe that the errors were harmless be-

yond a reasonable doubt in this case in view of the amount of the government proof, the admissions made by Jose and the weakness of the entrapment defense. Therefore, as to both the admission of the informer's hearsay statements and the prosecutor's statement of personal belief, we are satisfied the errors were harmless.

Third, the defendants say that the trial court erred in not submitting a proposed instruction limiting the consideration of proof of other offenses, relying on United States v. McClain, 142 U.S. App.D.C. 213, 440 F.2d 241. Their instruction would have charged that any evidence of other probable violations had been admitted for the limited purpose of enabling the jury to evaluate the defendants' claims of entrapment.

■■ However, the trial court clearly instructed the jury that the defendants were on trial only for the acts alleged in the indictment and that the jury should consider only whether the defendants had committed those acts. We are satisfied that the charge properly limited the use of the proof for this case. Moreover the main issue for the jury was entrapment.[8] As to it consideration of proof of other heroin transactions was not improper since the defense turns on whether the defendants were predisposed to the criminal conduct, or whether it was implanted in their minds by government agents. United States v. Russell, 411 U.S. 423, 434–436, 93 S.Ct. 1637, 36 L.Ed.2d 366.

In substance the defendants say the jury should have been told to consider the proof of other offenses only on the question of predisposition and the entrapment defense. Since this was the main issue submitted anyway, there could have been no substantial harm. See Corcoran v. United States, 427 F.2d 16, 17 (9th Cir.). In the context of this case the instructions were adequate and no prejudicial error occurred.

---

8. On count 3 there was an issue whether defendants possessed the 3 grams of heroin, found during the search, with the intent to distribute. However on this count the jury found the defendants guilty only of simple possession.

Fourth, the defendants argue that the trial court erred in failing to give their requested instruction on entrapment.

Defendants say that in essence they are claiming that after the informant was arrested, he had to produce a dealer to the government to insure he would maintain his freedom. They argue that he therefore induced Jose to procure a supply of heroin, part of which was subsequently delivered to the agents, and that the inducement by the informer subsequently led to the course of conduct with regard to the delivery of heroin, for which the defendants were indicted. Pointing to Sherman v. United States, 356 U.S. 369, 374, 78 S.Ct. 819, 2 L.Ed.2d 848, they say it should have been explained in the instructions that entrapment may include a course of conduct which was the product of inducement by government agents.

We are satisfied, however, that the charge given on entrapment was proper under the latest pronouncement of the Supreme Court. See United States v. Russell, supra, 411 U.S. at 427 n. 4, 434–436, 93 S.Ct. 1637, 36 L.Ed.2d 366; see also United States v. Hayes, 477 F.2d 868 (10th Cir.). Lack of the particular explanation sought was not prejudicial.

We are convinced that there was no prejudicial error and the judgment is affirmed.

LEWIS, Chief Judge (concurring in the result).

I agree that this case is properly affirmed but, in part, for different reasons than those expressed in the main opinion. I am in agreement with the trial court's ruling that the matter of admitting hearsay evidence of the informer's statements, termed error but harmless in the majority opinion, was initiated and pursued by defendants for their benefit. Specific inquiries as to statements made by the informer to the agent were drawn out on cross-examination presumably as an aid to establishing entrapment. The trial court, noting that defendants had opened up this avenue of inquiry, allowed the government to meet this approach with further but limited inquiry by the prosecution in the area of hearsay. I do not agree that the trial court erred in this respect.