**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

INTERSTATE GENERAL COMPANY, L.P.;
ST. CHARLES ASSOCIATES, LTD., A
PARTNERSHIP,
              *Defendants-Appellants,*

              and

JAMES J. WILSON,
                           *Defendant.*

PACIFIC LEGAL FOUNDATION;
FOUNDATION FOR ENVIRONMENTAL AND
ECONOMIC PROGRESS, INCORPORATED;
THE STATE OF MARYLAND,
DEPARTMENT OF THE ENVIRONMENT;
ANACOSTIA RIVERKEEPER; CHESAPEAKE
BAY FOUNDATION, INCORPORATED,
              *Amici Curiae.*

No. 01-4513

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CR-95-390, CA-96-1112)

Argued: May 6, 2002

Decided: July 2, 2002

Before LUTTIG, WILLIAMS, and MICHAEL, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Alfred Henry Moses, COVINGTON & BURLING, Washington, D.C., for Appellants. William Warren Hamel, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Emily Johnson Henn, COVINGTON & BURLING, Washington, D.C., for Appellants. Thomas M. DiBiagio, United States Attorney, James C. Howard, Assistant United States Attorney, Baltimore, Maryland; John Cruden, Acting Assistant Attorney General, Katherine W. Hazard, Environment & Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. M. Reed Hopper, Robin L. Rivett, PACIFIC LEGAL FOUNDATION, Sacramento, California, for Amicus Curiae Pacific Legal Foundation. Virginia S. Albrecht, Stephen M. Nickelsburg, HUNTON & WILLIAMS, Washington, D.C.; Michael R. Shebelskie, HUNTON & WILLIAMS, Richmond, Virginia, for Amicus Curiae Foundation for Environmental and Ecomonic Progress. J. Joseph Curran, Jr., Attorney General of Maryland, Stephanie Cobb Williams, Assistant Attorney General, Adam D. Snyder, Assistant Attorney General, Baltimore, Maryland, for Amicus Curiae State of Maryland. Roger C. Wolf, UNIVERSITY OF MARYLAND ENVIRONMENTAL LEGAL CLINIC, Baltimore, Maryland, for Amicus Curiae Anacostia Riverkeeper. Roy A. Hoagland, THE CHESAPEAKE BAY FOUNDATION, INC., Annapolis, Maryland, for Amicus Curiae Chesapeake Bay Foundation.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

In 1999 Interstate General Co., L.P. (IGC) pled guilty to one count of knowingly discharging fill materials into protected wetlands in vio-

lation of the Clean Water Act, 33 U.S.C. §§ 1311(a) & 1319(c)(2)(A), and entered into a consent decree with the United States. The consent decree, among other things, required IGC to implement a remediation plan for the disturbed wetlands. In January 2001 the Supreme Court decided *Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers*, 531 U.S. 159 (2001) (*SWANCC*), which limited the scope of the Clean Water Act. Soon after, IGC filed a petition for writ of error coram nobis and a motion to vacate the consent decree under Fed. R. Civ. P. 60(b)(5), arguing that *SWANCC* legalized the conduct underlying the criminal conviction and the consent decree. Concluding that *SWANCC* did not change the decisional law applicable to this case, the district court rejected both the petition for writ of error coram nobis and the motion to vacate. We agree with the district court and therefore affirm its order.

## I.

In September 1995 the United States began parallel criminal and civil proceedings against IGC, St. Charles Associates, L.P. (SCA), and James J. Wilson, the chief executive officer of both companies. IGC is a publicly traded land development company. IGC is also the general partner of SCA, a limited partnership that owns land under development in St. Charles, Maryland. The defendants were charged with violating the Clean Water Act by discharging fill material onto four parcels of wetlands in St. Charles without a permit from the United States Army Corps of Engineers (the Corps).

Section 404(a) of the Clean Water Act authorizes the Corps to regulate the discharge of fill materials into "navigable waters." 33 U.S.C. § 1344(a) (2001). The Act defines "navigable waters" as "the waters of the United States." 33 U.S.C. § 1362(7) (2001). The Corps has issued regulations defining "waters of the United States" to include

> (1) All waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide;

> (2) All interstate waters including interstate wetlands;

(3)    All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce . . .;

(4)    All impoundments of waters otherwise defined as waters of the United States under the definition;

(5)    Tributaries of waters identified in paragraphs (a)(1) through (4) of this section;

(6)    The territorial seas;

(7)    Wetlands adjacent to waters (other than waters that are themselves wetlands) identified in paragraphs (a)(1) through (6) of this section.

33 C.F.R. § 328.3(a) (2001). The wetlands at issue here are adjacent to the headwaters of small streams that flow into Port Tobacco Creek, Piney Branch, or Mattawoman Creek. These waters in turn flow into the Potomac River and ultimately the Chesapeake Bay. The Chesapeake Bay is navigable. In short, the wetlands are adjacent to tributaries of traditional navigable waters.[1]

In February 1996 a jury convicted the defendants on four felony counts of knowingly discharging fill material into wetlands protected by the Clean Water Act. Wilson received a 21-month prison term and a $1 million fine. IGC was fined $2 million and placed on five years probation, and SCA was fined $1 million and placed on five years probation. The defendants were also ordered to implement a wetlands restoration plan.

This court subsequently reversed the convictions and remanded the matter for a new trial. *See United States v. Wilson*, 133 F.3d 251 (4th

---

[1]To avoid confusion between the statutory term "navigable waters" as defined in the Clean Water Act and the traditional use of the term to indicate waters that may be used in commerce, we refer to the latter as "traditional navigable waters."

Cir. 1997). The problem was that the district court, in instructing the jury, had relied on 33 C.F.R. § 328.3(a)(3) as a possible basis for the Corps's jurisdiction. We concluded that the Corps had exceeded its congressional authorization under the Clean Water Act in promulgating § 328.3(a)(3). Consequently, we held that § 328.3(a)(3) was invalid and that the district court's instruction based on that regulation was erroneous. *Id.* at 256-57.

After remand the parties settled both the criminal and civil aspects of the controversy. IGC pled guilty to a single felony count and paid a $1.5 million fine. The parties also signed a consent decree, which required IGC to pay a civil penalty of $400,000 and to implement a wetland remediation plan. In return, the government dismissed all charges against Wilson and SCA. The district court sentenced IGC and entered the consent decree on November 22, 1999. After the Supreme Court decided *SWANCC*, IGC filed a petition for a writ of error coram nobis and a motion to vacate the consent decree under Fed. R. Civ. P. 60(b)(5). The district court denied both applications on June 12, 2001, and IGC appealed.

## II.

Neither the writ of error coram nobis nor the motion to vacate is warranted unless there has been a fundamental or significant change in the law governing this case. IGC contends that such a change has occurred because *SWANCC* eliminated the federal government's jurisdiction over the St. Charles wetlands. As a result, IGC claims that it did not violate the Clean Water Act by filling in those wetlands. We disagree because *SWANCC* deals with a provision of the regulation, 33 C.F.R. § 328.3(a)(3), that the government did not use to assert jurisdiction for the plea agreement or the consent decree.

Federal courts have the power under the All-Writs Act, 28 U.S.C. § 1651(a), to grant a writ of error coram nobis vacating a conviction after a sentence has been served. *United States v. Morgan*, 346 U.S. 502 (1954). But this extraordinary relief should be granted only if an error "of the most fundamental character" has occurred, and no other remedy is available. *United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1988). While historically this common law writ was used to correct fundamental errors of fact, *Mandel* recognized that the writ

may also be issued to correct fundamental errors of law. *Id.* Such an error may occur when a significant change in the law following a conviction means that the defendant was convicted for conduct that is no longer illegal. For example, in *Mandel* we granted a writ of error coram nobis because the defendants' convictions were based on acts subsequently determined to be beyond the reach of the federal statute under which they were convicted. As with coram nobis, a threshold question under Fed. R. Civ. P. 60(b)(5) is whether there has been a significant change in the law. *Agostini v. Felton*, 521 U.S. 203, 215-16 (1997).[2] Rule 60(b)(5) gives a court discretion to void a consent decree if "it is no longer equitable that the judgment should have prospective application." In other words, it is appropriate to grant a Rule 60(b)(5) motion "if the court is convinced that [its prior decision] is clearly erroneous and would work a manifest injustice." *Agostini*, 521 U.S. at 236 (internal quotations omitted). According to the Supreme Court, this may occur "when the party seeking relief from an injunction or consent decree can show a significant change either in factual conditions or in law." *Id.* at 215 (internal quotations omitted). IGC argues that *SWANCC* significantly changed the law applicable to its conduct.

Both IGC's guilty plea and the consent decree assume that the Corps has jurisdiction under the Clean Water Act to regulate the St. Charles wetlands. This jurisdiction is no longer asserted under 33 C.F.R. § 328.3(a)(3) because *United States v. Wilson*, 133 F.3d 251 (4th Cir. 1997), declared that subsection of the regulation invalid. Instead, the Corps asserts jurisdiction over the wetlands because they are adjacent, 33 C.F.R. § 328.3(a)(7), to tributaries, § 328.3(a)(5), of traditional navigable waters, § 328.3(a)(1). The factual predicate for this jurisdiction, specifically, that the St. Charles wetlands are adjacent to tributaries of traditionally navigable waters, has been acknowledged by the parties and this court. For example, the superseding information to which IGC pled guilty describes the wetlands as "jurisdictional wetlands, adjacent to waters of the United States." In addition, in *Wilson* we concluded that "[t]he government demonstrated that water from these lands flowed in a drainage pattern through ditches, intermittent streams, and creeks, ultimately joining the Poto-

---

[2]Rule 60(b)(5) also applies if there has been a significant change in the facts, but IGC does not claim a factual change.

mac River, a tributary of the Chesapeake Bay." *Wilson*, 133 F.3d at 254-55.

IGC's argument is that *SWANCC* eliminated jurisdiction over wetlands adjacent to waters that are not traditionally navigable even if those waters eventually flow into traditional navigable waters. According to IGC, *SWANCC* limited the Corps's jurisdiction to (1) traditional navigable waters and (2) wetlands immediately adjacent to traditional navigable waters. Consequently, IGC continues, *SWANCC* eliminated the Corps's jurisdiction over the disputed wetlands so that discharging fill into them without a permit does not violate § 404(a) of the Clean Water Act.

IGC is incorrect. The only clear change in law made by *SWANCC* is much more narrow. At issue in *SWANCC* was the Corps's jurisdiction over an *isolated* intrastate body of water. "Petitioner argued that respondents have exceeded their statutory authority in interpreting the CWA to cover nonnavigable, *isolated*, intrastate waters based upon the presence of migratory birds." *SWANCC*, 531 U.S. at 165-66 (emphasis added). The Corps's jurisdiction in *SWANCC* was based solely on 33 C.F.R. § 328.3(a)(3), the only subsection that covers isolated bodies of water. The Supreme Court's actual holding is limited to one particular application of 33 C.F.R. § 328.3(a)(3):

> We hold that 33 C.F.R. § 328.3(a)(3) (1999), as clarified and applied to petitioner's balefill site pursuant to the "Migratory Bird Rule," 51 Fed. Reg. 41217 (1986), exceeds the authority granted to respondents under § 404(a) of the CWA.

*SWANCC*, 531 U.S. at 174. *See also id.* at 167 ("We conclude that the 'Migratory Bird Rule' is not fairly supported by the CWA."); *id.* at 171-72 ("We thus decline [to] . . . hold[ ] that isolated ponds, some only seasonal, wholly located within two Illinois counties, fall under § 404(a)'s definition of 'navigable waters' because they serve as habitat for migratory birds."). Because this court had already invalidated 33 C.F.R. § 328.3(a)(3) in its entirety in *United States v. Wilson*, 133 F.3d 251 (4th Cir. 1997), an opinion issued before either the plea or the consent decree, *SWANCC* effected no relevant change in decisional law in this circuit. In sum, *SWANCC*'s holding addressed only

the validity of 33 C.F.R. § 328.3(a)(3), and here the Corps's jurisdiction does not rest on subsection (a)(3). Rather, the Corps's jurisdiction for purposes of the guilty plea and the consent decree is based on 33 C.F.R. § 328.3(a)(1), (a)(5), and (a)(7). We therefore affirm the district court's order denying IGC's petition for writ of error coram nobis and denying IGC's motion to vacate the consent decree.

*AFFIRMED*