**UNITED STATES of America,**
**Plaintiff,**

v.

**ACQUEST DEVELOPMENT, LLC,**
**Acquest Transit, LLC, and William**
**L. Huntress, Defendants.**

**No. 11–CR–000347–WMS–JJM.**

United States District Court,
W.D. New York.

March 26, 2013.

David Ross Pfalzgraf, Jr., Rupp, Baase, Pfalzgraf, Cunningham & Coppola LLC, Buffalo, NY, Paul J. Cambria, Jr., Lipsitz Green Scime Cambria LLP, Buffalo, NY, for Plaintiff and Defendants.

## ORDER

WILLIAM M. SKRETNY, Chief Judge.

Having thoroughly reviewed Judge McCarthy's Report and Recommendation, the parties' objections thereto, and the applicable law, this Court agrees with the Judge's recommendation and finds in it no legal or factual error. As expressed in more detail at the status on March 25, 2013,

IT HEREBY IS ORDERED, that this Court accepts Judge McCarthy's November 8, 2012 Report and Recommendation [35] in its entirety.

FURTHER, that the Government's objections [43] are DENIED.

FURTHER, that Defendants' objections [41, 42] are DENIED.

FURTHER, that Defendants' motion to dismiss [14] is GRANTED, without prejudice, in accordance with the Report and Recommendation.

FURTHER, Defendants' omnibus motion [19] is DENIED as moot, in accordance with the Report and Recommendation.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

## REPORT AND RECOMMENDATION

JEREMIAH J. McCARTHY, United States Magistrate Judge.

### INTRODUCTION

Before me are defendants' motions seeking various forms of relief, including dis-

missal of the indictment [14, 19].[1] The motions have been referred to me by Hon. William M. Skretny for preparation of a Report and Recommendation [2]. At the conclusion of oral argument on October 24, 2012, I announced from the bench, and confirmed in a Text Order, that I would recommend dismissal of the indictment in a Report and Recommendation to follow [30, 31].

Although defendants' original motion did not specify whether they sought dismissal of the indictment with or without prejudice, at oral argument defense counsel suggested that dismissal should be with prejudice. Having now reviewed defendants' supplemental argument as to why the dismissal should be with prejudice [34], I conclude that there is no need for the government to respond. For the following reasons I recommend that the indictment be dismissed without prejudice, but that the motions otherwise be denied.

## BACKGROUND

The essential facts underlying this motion are undisputed (see Cambria Declaration [14], government's Consolidated Response [23] ). Defendants are charged in a seven-count indictment [1] with various crimes in connection with an alleged wetlands site in the Town of Amherst, New York, including conspiracy, obstruction of justice, concealment of material facts, and violations of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 et seq.

On December 2, 2010, the Acquest defendants' in-house counsel, Louis Fessard, was served with a grand jury subpoena directing him to appear for testimony before the grand jury on December 8, 2010, and to produce various documents relating to the preparation and submission of two letters to the U.S. Environmental Protec-

tion Agency dated November 28, 2007 and February 8, 2008 (the "EPA letters"). On December 8, 2010, Mr. Fessard appeared before the grand jury and asserted the attorney-client privilege concerning the preparation of the EPA letters. On December 15, 2010 the government moved to compel Mr. Fessard to testify before the grand jury and to produce the documents which he had withheld as privileged. On February 23, 2011, Judge Arcara granted that motion. On October 19, 2011, Mr. Fessard returned to the grand jury, where he engaged in the following exchange with counsel for the government:

"Q. Mr. Fessard, you are back here to testify. You recall you have previously been here to testify; is that fair to say?

A. Yes, that's correct.

Q. And in your previous testimony, if you can recall, there was [sic ] certain questions that I asked you that you elected to invoke the attorney/client privilege and chose not to answer certain questions. You understand that?

A. Yes.

Q. And, in response, are you aware that started sort of a separate process? Are you aware that the government then filed a motion with the Federal District Court to compel your testimony and the production of certain documents, essentially before this Grand Jury?

A. Yes.

Q. And the motion was based on the fact that the government believed that there was what is legally known as a crime fraud exception to the attorney/client privilege and that crime fraud exception, in es-

---

**1.** Bracketed references are to CM/ECF docket entries.

sence, defeated the privilege and, in essence, would allow you to not violate that privilege and testify here today? That was the government's position?

A. Yes.

Q. Are you aware of that?

A. Yes, I'm aware of that.

Q. That motion was litigated. Are you aware that the court issued an order, in fact, compelling you to come and testify and provide certain documents and *the Court found that a crime fraud exception to the attorney/client privilege, in fact, was present?*

A. Yes. I'm aware of that.

Q. Okay. I'm going to show you Grand Jury Exhibit 236. I ask you if you've seen this document.

A. Yes, I have seen it and reviewed it.

Q. *I'll put it on the screen.* What is this document? Why don't you tell the Grand Jurors.

A. That was the end result of the motion that the government brought and that was contested by Paul Cambria to compel me to testify relative to those questions with regard to the two letters, the two EPA inquiry letters and my response letters thereto, which I had taken the attorney/client privilege on in December and Judge Arcara ruled that the crime fraud exception to the attorney/client privilege applied and it compelled me to testify and answer those questions and I believe it also said with regard to the withheld documents, there were five of them, that Mr. Personius had withheld that we had to produce those documents as well.

Q. And you mentioned Paul Cambria. He is an attorney who represents Bill Huntress and/or Acquest; is that fair to say?

A. That's correct.

Q. And Mr. Personius' your attorney?

A. Yes.

Q. And I'm going to actually flip to the last portion of this document, Grand Jury Exhibit 236. *I just want to read it into the record. On page seven and going on to eight we'll read:*

*Having provided this Court with probable cause to believe; one, that certain environmental crimes may have been committed; two, that Acquest may have engaged in sham farming activity as a pretext to conduct its otherwise impermissible development of the site; and three, that Fessard's letters were sent to the EPA in furtherance of the ongoing environmental violations and to thwart or hinder the EPA's investigation thereafter, the government has met its burden of demonstrating that the crime fraud exception to the attorney/client privilege applies ... with respect to the Fessard letters. Accordingly, the Court finds that the crime fraud exception applies.* Fessard is hereby compelled to comply with the Grand Jury subpoena seeking testimony and documents relating to the Preparation, drafting, review and submission of his November 28th, '07 and February 8th, '08 letters to the EPA ordered by the district court.

Correct?

A. Yes." (Cambria Declaration [14], pp. 5–7) (emphasis added).

On November 9, 2011, the grand jury returned the seven-count indictment [1], including charges which are extremely

similar to Judge Arcara's earlier probable cause findings. For example:

— Judge Arcara found "probable cause to believe ... that Acquest may have engaged in sham farming activity as a pretext to conduct its otherwise impermissible development of the site" (Cambria Declaration [14], p. 6), and the indictment charges that "[i]n order to conceal [their] conduct ... defendants ... hired various farmers to conduct agricultural activity on the Site in an attempt to exempt the earth-moving and discharge activities occurring on the Site from the provisions of the CWA" ( [1], Count 1, ¶ 8);

— Judge Arcara found "probable cause to believe ... that Fessard's letters were sent to the EPA in furtherance of the ongoing environmental violations and to thwart or hinder the EPA's investigation" (Cambria Declaration [14], p. 6), and the indictment charges that these letters were sent to the EPA in furtherance of defendants' conspiracy to conceal their activities and obstruct the EPA's investigation ( [1], Count 1, ¶¶ 43, 47);

— Judge Arcara found "probable cause to believe .... that certain environmental crimes may have been committed" (Cambria Declaration [14], p. 6), and the indictment charges violations of the CWA ( [1], Counts 6 and 7).

In moving to dismiss the indictment, defendants argue that the government impermissibly interfered with the grand jury's independence by calling its attention to Judge Arcara's Order compelling Mr. Fessard to testify, including his finding of probable cause to believe that crimes had been committed (Cambria Declaration [14], Point I). In response, the government argues that because Fessard had initially refused to testify, "the grand jury was entitled to hear that Fessard had been compelled, and the circumstances leading up to that compulsion, so that they could

appropriately weigh his testimony and understand why he was now electing to provide testimony. The compulsion order was not introduced by the government to usurp the grand jury's function, but simply, to provide the grand jury with a better understanding of the events that lead Fessard back into the grand jury". Consolidated Response [23], p. 31.

The government further notes that "Fessard's testimony was not the only evidence presented to the grand jury .... 20 witnesses other than Fessard testified, which amounted to 1,120 pages of testimony (as opposed to 165 pages for Fessard) and the introduction of hundreds of grand jury exhibits". *Id.*, pp. 31–32.

## ANALYSIS

### A. Does This Court Have Subject Matter Jurisdiction?

■■■ Before considering any other aspect of their motion, I must first address defendants' contention that this court lacks subject matter jurisdiction, since "subject matter jurisdiction is a threshold question that must be resolved before proceeding to the merits". *Young–Gibson v. Patel*, 2012 WL 2096939, *1 (2d Cir.2012) (Summary Order).

■■■ Defendants argue that this court lacks subject matter jurisdiction because the EPA's actions were illegal, and because their property is exempt from the provisions of the Clean Water Act. *See* Cambria Declaration [14], Points II and III. I disagree. This court's subject matter jurisdiction depends upon whether federal crimes are alleged, not whether they can be proven. "Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prose-

cutions to federal courts. That's the beginning and the end of the jurisdictional inquiry." *Hugi v. United States,* 164 F.3d 378, 380 (7th Cir.1999). "[D]istrict judges *always* have subject-matter jurisdiction based on *any* indictment purporting to charge a violation of federal criminal law". *United States v. Bjorkman,* 270 F.3d 482, 490 (7th Cir.2001), *cert. denied,* 535 U.S. 1095, 122 S.Ct. 2290, 152 L.Ed.2d 1049 (2002) (emphasis in original).[2]

Therefore, I recommend that defendants' challenge to this court's subject matter jurisdiction be rejected.[3]

## B. Did the Grand Jury Act Independently of Judge Arcara's Probable Cause Determination?

■ "When the framers of the Bill of Rights directed in the Fifth Amendment that 'No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury,' they were not engaging in a mere verbal exercise." *United States v. Estepa,* 471 F.2d 1132, 1136 (2d Cir.1972). "The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *United States v. Gonzalez,* 686 F.3d 122, 127 (2d Cir.2012).[4]

■ "The right to have the grand jury make the charge *on its own judgment* is a substantial right which cannot be taken away." *Stirone,* 361 U.S. at 218–19, 80 S.Ct. 270; *Gonzalez,* 686 F.3d at 127 (emphasis added). "If the Grand Jury Clause means anything, it means that a criminal indictment must actually issue from a grand jury, not some other source.... [I]n order for an indictment to be recognized as actually issuing from a grand jury, it must be the product of an investigative deliberation that is *independent* of both the prosecuting attorney and the court. Without a guarantee of independence, the indictment would not be the genuine issue of a grand jury within the meaning of the Constitution." *United States v. Leeper,* 2006 WL

---

**2.** *See also United States v. Borbon,* 326 Fed. Appx. 35, 37 (2d Cir.2009) (Summary Order) ("Because Borbon was charged with two federal ... crimes, the district court had subject matter jurisdiction over the prosecution of these crimes pursuant to 18 U.S.C. § 3231"); *United States v. Interstate General Co.,* 152 F.Supp.2d 843, 849 (D.Md.2001), *aff'd,* 39 Fed.Appx. 870 (4th Cir.2002) (unpublished opinion) ("whether the parcels of land were navigable or abutting navigable waters is simply an element of the crime which the Defendants were charged with. This Court, clearly, still has subject matter jurisdiction over the case by virtue of the fact that they were charged with a federal crime pursuant to 18 U.S.C. § 3231").

**3.** While professing "not ... to re-argue their prior ... jurisdictional defense", defendants proceed to argue that the indictment should be dismissed with prejudice because the "property in question had been designated by in 1987 by the Soil Conservation Service as PC Cropland.... Put another way, this designation plainly removed any jurisdiction or authority that the government had to pursue a CWA prosecution against the defendants herein." Defendants' Memorandum of Law [34], pp. 13–14. However, whether the government can prove that the property is subject to the CWA is not subject to review on this motion. *See Costello v. United States* 350 U.S. 359, 364, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (indictments may not be challenged "on the ground that they are not supported by adequate or competent evidence").

**4.** Accordingly, "[j]udges' direct involvement in the functioning of the grand jury has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office". *United States v. Williams,* 504 U.S. 36, 47, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992).

1455485, *2 (W.D.N.Y.2006) (Arcara, J.) (emphasis in original).

Thus, "[i]t is well-established that the Fifth Amendment may be violated if the independence of the grand jury in performing its historical function is substantially infringed". *United States v. Collins,* 684 F.3d 873, 885 (9th Cir.2012). "In other words, the inquiry is focused on whether the alleged errors infringed upon the grand jury's ability to exercise independent judgment." *Leeper,* *4. *See also Bank of Nova Scotia v. United States,* 487 U.S. 250, 259, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (suggesting that an infringement of the grand jury's independence "may result in grave doubt as to a violation's effect on the grand jury's decision to indict", warranting dismissal of the indictment).

In *Leeper,* this court dismissed an indictment because the prosecutor informed the grand jury that another grand jury had recently returned an indictment on the same charges: "There can be no doubt that the irregularity of the ... proceedings affected the grand jury's decision to issue the Second Superseding Indictment. The ... grand jurors were most certainly predisposed to indict after hearing that a prior grand jury—upon hearing the same evidence—had found sufficient probable cause to indict." *Id.,* *4.

If anything, the government's disclosure to this grand jury of the fact that Judge Arcara had already found probable cause likely had a *greater* impact than its disclosure to the *Leeper* grand jury of the fact that another grand jury had found probable cause. "A judge's actions are of a sort most likely to remain firmly lodged

in the memory of the jury." *Allstate Insurance. Co. v. James,* 845 F.2d 315, 319 (11th Cir.1988). "[H]is lightest word or intimation is received with deference, and may prove controlling." *Quercia v. United States,* 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); *United States v. Grunberger,* 431 F.2d 1062, 1068 (2d Cir. 1970).[5]

It is well settled that a judgment will be reversed "if the judge expresses his opinion on an ultimate issue of fact in front of the jury". *Bonner v. Guccione,* 178 F.3d 581, 592 (2d Cir.1999); *Shah v. Pan Am. World Services, Inc.,* 148 F.3d 84, 98 (2d Cir.1998), *cert. denied,* 525 U.S. 1142, 119 S.Ct. 1033, 143 L.Ed.2d 42 (1999). The "ultimate issue of fact" before this grand jury was whether or not there was probable cause to believe that crimes had been committed, and in his Order compelling Fessard to testify—which was both read to and provided to the grand jury—Judge Arcara expressly found the existence of probable cause as to several of the crimes which were subsequently included in the indictment. Moreover, that Order expressly found that "the government has *met its burden* of demonstrating that the crime fraud exception to the attorney/client privilege applies" (Cambria Declaration [14], p. 6) (emphasis added).

The government suggests that any undue impact of Judge Arcara's probable cause finding was negated by the instruction that the determination of probable cause was theirs alone to make. I disagree: even assuming that such an instruction *was* given,[6] the damage was already done. *See Leeper,* *3 ("The prosecutor also told the grand jurors that 'the fact that some other grand jury heard

---

5. Although *James, Quercia* and *Grunberger* each involved comments by a trial judge to a trial jury (rather than a grand jury), that distinction is not material to my analysis.

6. The government has not produced that portion of the grand jury proceedings.

this case should not play a part in your deliberation' and that they should make their 'own determination'. Nevertheless, that admonition was meaningless in the context of the proceeding"); *Quercia*, 289 U.S. at 472, 53 S.Ct. 698 ("Nor do we think that the error was ·cured by the statement· of the trial judge that his opinion of the evidence was not binding on the jury.... His definite and concrete assertion .... was of a sort most likely to remain firmly lodged in the memory of the jury and to excite a prejudice which would preclude a fair and dispassionate consideration of the evidence"); *Grunberger*, 431 F.2d at 1068 ("instructions given in the charge to the jury that they are the sole judges of the credibility of the witnesses cannot remove the impression so created" by judicial comments).

The government also notes that "Fessard's testimony was not the only evidence presented to the grand jury" (Consolidated Response [23], p. 31). However, defendants' concern is not with the sufficiency of evidence to support a finding of probable cause, but with the effect of Fessard's testimony (including the detailed description of Judge Arcara's probable cause determination) upon the grand jury's independence. "It would be inappropriate for a court to speculate as to whether a grand jury *might* have returned an indictment in conformity with the available evidence, because such an exercise would work the harm the Grand Jury Clause is intended to prevent—a federal· prosecution begun by arms of the Government without the consent of fellow citizens." *Gonzalez*, 686 F.3d at 128 (emphasis in original); *United States v. Thomas*, 274 F.3d 655, 670 (2d

Cir.2001). *See also* 4 LaFave, *et al.*, *Criminal Procedure* § 15.6(e) (3d ed.) ("In the grand jury setting, the federal court ... must go beyond the question of whether the grand jury had before it sufficient evidence of guilt. Misconduct may be so influential as to make it likely that the grand jury gave it great weight in deciding to indict notwithstanding that the untainted remainder of the prosecution's presentation would have been sufficient to support indictment").

I am unpersuaded by the government's arguments as to why the grand jury needed· to hear the details of Judge Arcara's findings. The grand jury did not need to hear that Judge Arcara had found probable cause "so that they could appropriately weigh his testimony and understand why he was now electing to provide testimony" (Consolidated Response, p. 31)—it would have been sufficient merely to tell· them that he had been ordered to testify.[7] Nor did they need to hear those details in case Mr. Fessard refused to testify, as suggested by the government during oral argument. He did *not* refuse to testify upon his return to the grand jury, and even if he had, in order to protect its ability to seek an order of contempt or other relief, the government needed only to ask him whether he was aware of the Order, without getting into the details of why that Order was entered.

▬ Although defendants argue that the government intentionally subverted the grand jury's independence in order to obtain an indictment, I need not decide whether the government acted intentionally or inadvertently, for "in determining whether the defendant suffered prejudice, the inquiry focuses not on the degree of

---

**7.** The government argues that "grand juries routinely hear details regarding how a witness was compelled to testify before them", citing several authorities (Consolidated Re-

sponse [23], p. 32). However, in none of those cases was the grand jury told that the judge had made a probable cause finding.

culpability of the prosecutor, but on the impact of his misconduct on the grand jury's impartiality." *Leeper,* \*5; *United States v. Sears, Roebuck & Co. Inc.,* 719 F.2d 1386, 1392 (9th Cir.1983), *cert. denied,* 465 U.S. 1079, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984).

 To warrant dismissal of the indictment, I need not necessarily conclude that "the violation substantially influenced the grand jury's decision to indict"—instead, I need only have "grave doubt that the decision to indict was free from the substantial influence of such violations". *See Bank of Nova Scotia,* 487 U.S. at 256, 108 S.Ct. 2369; *United States v. Kasper,* 2012 WL 243609, \*2 (W.D.N.Y.2012) (Skretny, J.). For the reasons already discussed, I have "grave doubt" that this grand jury returned the indictment "on its own judgment" (*Stirone,* 361 U.S. at 219, 80 S.Ct. 270; *Gonzalez,* 686 F.3d at 127), free from the influence of Judge Arcara's probable cause determination.

I recognize that "[d]ismissal of an indictment because of defects in grand jury proceedings is the most drastic remedy, and thus is rarely used". *Kasper,* \*2. However, in my view, this is the rare case in which no remedy short of dismissal can adequately vindicate defendants' Fifth Amendment rights. "To let the indictment stand under these circumstances would make a mockery out of the entire grand jury process and would render the Grand Jury Clause a nullity." *Leeper,* \*5.

### C. Should the Indictment be Dismissed With Prejudice?

 While courts may have the authority dismiss an indictment with prejudice, that authority should be exercised "only in extreme circumstances." *United States v. Slough,* 679 F.Supp.2d 55, 61 (D.D.C.2010). Courts have refused to dismiss with prejudice even where the government's "con-

duct was patently egregious". *United States v. Omni International Corp.,* 634 F.Supp. 1414, 1440 (D.Md.1986). Dismissal with prejudice is warranted only where "the actual evidence against the defendants is tainted irrevocably", or "there exists ... a pattern of prosecutorial misconduct that is widespread or continuous". *United States v. Lawson,* 502 F.Supp. 158, 172 (D.Md.1980).

 In all other cases, "dismissal without prejudice is ordinarily the appropriate remedy for prejudicial prosecutorial misconduct during grand jury proceedings." *Slough,* 679 F.Supp.2d at 61; *see also Leeper,* \*5, n. 7 ("where constitutional violations have been found, the remedy is to restore the defendant to the position he would have been in but for the alleged violation. Dismissal of the indictment without prejudice accomplishes this result").

 "Although defendants do have a constitutional right to an informed and unbiased grand jury, they have no concomitant right to bar forever investigation into their alleged criminal conduct.... [T]he costs to society are simply too high". *Lawson,* 502 F.Supp. at 172, 173. "[T]he better view is to allow reindictment upon dismissal if the new grand jury would not be affected by the prior government improprieties." *Id.* at 172. "This well-settled principle would permit the prosecution to seek re-indictment of the defendant before a new *unbiased* and *independent* grand jury." *Leeper,* \*5, n. 7 (emphasis in original).

Defendants argue that this court "cannot simply provide the government with a 'do over.' As voluntary disclosure of grand jury minutes in the future does not sound likely ... only a dismissal with prejudice will deter the government from repeating such misconduct." Defendants'

Memorandum of Law [34], p. 10. I disagree. If the government decides to present the case to a new grand jury (assuming that my recommendation to dismiss the pending indictment is adopted), I think it is highly unlikely that it would run the risk of again disclosing Judge Arcara's probable cause findings to that grand jury—and it is hereby cautioned against doing so.

In order to ensure that this warning is heeded, the court may conduct an *in camera* review of proceedings before the new grand jury. *See Frederick v. New York City*, 2012 WL 4947806, *7, *14 (S.D.N.Y. 2012) ("Rule 6(e)(3)(E)(i) of the Federal Rules of Criminal Procedure provides that a court 'may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grandjury matter ... preliminarily to or in connection with a judicial proceeding'.... Out of an abundance of caution, however, the Court concludes that it can best avoid possible injustice and protect grand jury secrecy by reviewing all of the grand jury minutes *in camera*").

Should that review disclose that Judge Arcara's probable cause findings have once again been disclosed to the grand jury, any indictment returned by that grand jury will likely be subject to dismissal *with* prejudice. *See* Gershman, *Prosecutorial Misconduct* § 2:56 (2d ed.) ("Courts that dismiss without prejudice to resubmission may issue strong admonitions to prosecutors and threaten to dismiss absolutely should the warning go unheeded").

## CONCLUSION

For the foregoing reasons, I recommend (1) that defendants' motion to dismiss the

indictment for lack of subject matter jurisdiction ( [14], Points II and III) be denied; (2) that defendants' motion to dismiss the indictment due to the government's interference with the grand jury's independence ( [14], Point I) be granted, without prejudice to the government's right to seek another indictment before a different grand jury; and (3) that the remainder of that motion [14], along with · defendants' motion for a bill of particulars and other relief [19], be denied as moot, without prejudice to renewal in the event · that this Report and Recommendation is not adopted, or in the event that a new indictment is returned.[8]

Unless otherwise ordered by Judge Skretny, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by November 26, 2012 (applying the time frames set forth in Rules 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely ... waives any right to further judicial review of [this] decision". *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.1988); *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. *Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules

---

**8.** *See* October 25, 2012 Text Order [31] ("The parties agree that this recommendation will render moot the remaining issues raised in defendants' pretrial motions [14, 19] (other than those directed at the court's subject matter jurisdiction), subject to renewal if my recommendation is not adopted").

of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: November 8, 2012.